[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11129

_____

DAPHNE BERRY,

Plaintiff-Appellant,

*versus*

CRESTWOOD HEALTHCARE LP,
CHS PROFESSIONAL SERVICES CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:19-cv-01407-LCB

_____

Before WILLIAM PRYOR, Chief Judge, ABUDU, Circuit Judge, and BARBER,* District Judge.

WILLIAM PRYOR:

This appeal requires us to decide whether a former employee presented substantial evidence of retaliation to survive summary judgment. Daphne Berry repeatedly complained about racial discrimination in the months before Crestwood Healthcare terminated her employment. But, also during that period, Crestwood uncovered evidence that Berry engaged in bullying and other misconduct. After Berry sued Crestwood for retaliating against her complaints of discrimination, she argued that circumstantial evidence created a reasonable inference of retaliation under either the *McDonnell Douglas* framework or a "convincing mosaic" of proof. The district court disagreed and entered summary judgment in favor of Crestwood. Although an employee may prove retaliation with whatever circumstantial evidence creates a reasonable inference of retaliation, Berry's evidence falls short. We affirm the summary judgment in favor of Crestwood.

## I. BACKGROUND

Daphne Berry, a black female, worked at Crestwood Hospital as an emergency department nurse from 2007 to 2018. She was hired as a staff nurse and later promoted to full-time charge

---

* Honorable Thomas P. Barber, United States District Judge for the Middle District of Florida, sitting by designation.

nurse. In that role, Berry supervised weekday-shift employees in the emergency department.

Berry's immediate supervisor described Berry as "an excellent nurse with a strong personality." She reported that Berry "always held her crew accountable" and led "the strongest and smoothest crew" in the emergency department. Berry's performance evaluations, including the last one she received from Crestwood, reveal that she consistently met or exceeded her supervisor's expectations. But many of Berry's colleagues disagreed.

Berry clashed with other nurses. For example, in February 2018, Berry had an altercation with Shane Gann. In the presence of others, Berry told Gann that he "suck[ed] as a nurse," and Gann screamed at Berry. Berry received informal counseling about the incident, and Gann resigned before Crestwood could discipline him. Also in February 2018, the director of the emergency department learned that Berry and another nurse, Paul Mizzell, had "exhibited bullying behavior toward their colleagues." The director stated that Mizzell's behavior improved over time, but Berry's behavior did not.

Also in February 2018, during a shift on which she was the charge nurse, Berry and her team provided medical care to a combative psychiatric patient. Video recordings revealed that the nurses behaved inappropriately. For example, they sang, danced, and laughed in the patient's room, and one nurse slapped the patient's hand. Shortly after, Crestwood received a complaint about the incident from someone claiming to be a patient or a patient's

family member. One employee heard that another hospital employee, Sheila Primeau, had planned to pose as a patient's family member and make the complaint. The employee told Berry that Primeau made the complaint to get the black nurses fired "because they're loud."

Crestwood investigated the nurses' conduct during the patient incident. While the investigation was ongoing, Berry made verbal complaints to her supervisors. She reported that Primeau made the complaint pretending to be a patient's family member because she is racist. Berry also called Crestwood's corporate-compliance hotline and made two anonymous complaints about the handling of the patient incident, racial targeting, and unfair treatment by management.

Crestwood disciplined the nurses for their conduct during the incident. All nurses involved, including Berry, received disciplinary notices and three days of unpaid suspension. Berry was also demoted from serving as a charge nurse. When the human resources director told Berry about the suspension and demotion, Berry complained again that Primeau had lodged the complaint out of racial animus. She also complained that her discipline was racially motivated.

At least one nurse received a reduced suspension after the initial discipline was issued. During Berry's suspension, someone from Crestwood called Berry and asked if she wanted to meet with the chief nursing officer to discuss the prospect of reducing her suspension. Berry declined.

Berry then filed a grievance alleging that she was treated unfairly and targeted because of her race. Berry also identified herself as the person who made the earlier anonymous complaints to the hotline. In the weeks that followed, Berry called the hotline several more times to complain about racial discrimination. Her last call occurred on May 11, 2018.

After receiving several complaints and noticing significant department turnover, Crestwood sent its Regional Human Resources Director, Lisa Friday, to investigate the complaints and conduct an employee-relations survey. Between May 14 and May 17, Friday interviewed 24 hospital staff members. She asked similar questions of each interviewee and took detailed notes.

The interviews revealed significant evidence of misconduct and bullying by Berry. Out of 24 interviewees, 16 raised specific concerns about Berry. One interviewee reported that "[Berry] is always in the mix of everything that causes problems" and that "when [Berry] is around, there is chaos and continual bickering." Another reported, "[t]here is much bullying by [Berry]," "[s]he is mean and doesn't allow RNs to do their jobs," and "[she] yells and screams at [staff] and won't help them." Another said that Berry "is a bully and demeans people." Another reported that Berry "degrades most people all day long" and that she is "the ring leader for all the problems." Another said, "[t]here is much bullying and intimidation . . . mostly done by [Berry]." That employee explained that "[m]ost people call [a group including Berry] the 'Mean Girls'" and that "[t]hey make back-handed threats." Anoth-

er employee reported that "[Berry] screams and fights with people . . . and demeans people in the ER." Another said, "[Berry] is horribly mean" and "rude" and "is always bullying someone." The employee also said that Berry "caused at least 7 employees to quit." Another said, "[w]e lose RNs because of [Berry]" and "there are patient safety issues because of [Berry]." Another reported that Berry is "abusive" and that "5 or 6 people have already left because of [Berry]." One employee claimed to have "7 shoe boxes full of dates, times, and incidents over the last several months that involve [Berry's] threatening behavior." The same employee claimed that Berry was "very violent" on two occasions. Several employees suggested that Crestwood "get rid of [Berry]."

During her interview with Friday, Berry complained again about racial discrimination and unfair treatment. Berry's supervisor defended Berry and reported that "people are targeting [Berry]." The supervisor claimed that Friday cut the interview short when Friday "realized [she] did not have negative words about [Berry]." One other employee complained about a racist comment made by Primeau. But most interviewees—including the interviewee who complained about Primeau—had negative feedback about Berry in particular.

After the investigation, Friday recommended that Crestwood terminate Berry's employment. She reported that a "common thread of the interviews was [Berry's] negativity, bullying, [and] unprofessional behavior" and that Berry "was the common denominator of the workplace interpersonal conflicts." Friday de-

termined that removing Berry "would improve morale and reduce turnover." Other hospital administrators agreed with Friday's recommendation. Berry was terminated on May 18, 2018. When Berry asked why she was being terminated, the human resources director retorted, "we don't have to tell you that!"

After Berry sued Crestwood for racial discrimination and retaliation, 42 U.S.C. §§ 1981, 2000e *et seq.*, and for negligence and outrage under state law, Crestwood moved for summary judgment. It argued that Berry could not establish a prima face case of retaliation because she could not establish a causal link between her protected activity and her termination. And even if she could, Crestwood argued, Berry offered no evidence that Crestwood's legitimate, nondiscriminatory reason for her termination was pretextual. Berry responded that she had established a prima facie case because of the close temporal proximity between her protected activity and termination. And she argued that Crestwood's justification for her termination was pretextual. Berry also argued that she presented a convincing mosaic of circumstantial evidence of retaliation.

The district court granted summary judgment in favor of Crestwood. It assumed without deciding that Berry could establish a prima facie case of retaliation. But it determined that she failed to create a genuine issue of pretext. And it ruled that there was "no convincing mosaic of circumstantial evidence of retaliation." Berry moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). She argued that an unpublished de-

cision of this Court constituted an intervening change in the law and that the district court made factual and legal errors in its pretext analysis. The district court denied the motion.

## II. STANDARD OF REVIEW

We review a district court's decision on summary judgment *de novo* and draw all reasonable inferences in the nonmoving party's favor. *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023).

## III. DISCUSSION

We divide our discussion in three parts. First, we explain why Berry's claim of retaliation fails under the *McDonnell Douglas* framework. Second, we explain that although an employee can prove retaliation with a convincing mosaic of circumstantial evidence, Berry failed to do so. Third, we explain that Berry failed to preserve a challenge to the denial of her postjudgment motion and that, in any event, her challenge fails.

Berry sued Crestwood for retaliation under Title VII and section 1981. Both statutes require the same proof and analytical framework. *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). So we analyze the claims together.

*A. Berry's Claims Fail Under the* McDonnell Douglas *Framework.*

Berry argues that she presented substantial evidence under the *McDonnell Douglas* framework, which has three steps. *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973). First, the employee must establish a prima facie case of retaliation by proving that she engaged in statutorily protected conduct; she suffered an adverse employment action; and a causal relation exists between the two events. *Tolar v. Bradley Arant Boult Cummings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). If an employee establishes a prima facie case, the employer may proffer a "legitimate, nonretaliatory reason" for the adverse action. *Id.* If the employer does so, the employee must prove that the employer's proffered reason was a pretext for retaliation. *Id.*

To prove that an employer's explanation is pretextual, an employee must cast enough doubt on its veracity that a reasonable factfinder could find it "unworthy of credence." *Gogel v. Kia Motors Manuf. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (citation and internal quotation marks omitted). If the employer's stated reason is legitimate—in other words, if it might motivate a reasonable employer to act—then the employee must address "that reason head on and rebut it." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022) (citation and internal quotation marks omitted). An employee cannot rebut a reason "by simply quarreling with the wisdom of" it. *Id.* (citation and internal quotation marks omitted). Instead, she must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the justification. *Id.* (citation omitted). To avoid a summary judgment, an employee must establish a genuine dispute of material fact that the employer's reason is pretextual. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 921 (11th Cir.

1993).

We assume without deciding that Berry established a prima facie case of retaliation and consider whether she presented evidence of pretext. Crestwood explained that it terminated Berry because "a multitude of [employees] reported that [she] was a bully, unprofessional, intimidating, and threatening." After interviewing 24 employees, Crestwood proffered that "Friday concluded that removing [Berry] from the work environment would improve morale and reduce turnover." This reason might legitimately motivate a reasonable employer to terminate an employee. *See Patterson*, 38 F.4th at 1352; *see Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452–53 (11th Cir. 1987). So Berry had to address it "head on and rebut it." *Patterson*, 38 F.4th at 1352 (citation and internal quotation marks omitted).

Berry contends that our precedents requiring her to "rebut" the employer's stated reason contravene the but-for standard for causation adopted in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). We have explained that to establish pretext, an employee must prove that the employer's reason "was false" and that "retaliation was the real reason." *Patterson*, 38 F.4th at 1352 (citation and internal quotation marks omitted). *Bostock* explains that "events [can] have multiple but-for causes" and an employer "cannot avoid liability just by citing some *other* factor that contributed to" its action. 140 S. Ct. at 1739. According to Berry, because there can be more than one but-for cause, a party should not be required to rebut an employer's justification.

Our precedents are consistent with *Bostock*. We have explained that to prove pretext, an employee must identify "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's justification. *Patterson*, 38 F.4th at 1352 (citation omitted). That burden does not require an employee to establish that an illegal reason was the *only* reason for the employer's action. Instead, it requires the employee to present evidence that casts doubt on the employer's proffered reason as the only reason for its action. *See Yelling v. St. Vincent's Health Sys.*, No. 21-10017, slip. op. at 20 (11th Cir. Oct. 5, 2023) (explaining that employees alleging multiple but-for causes must "show an *unlawful* but-for cause resulted in the alleged wrongful action" and "respond to [the employer's] legitimate reason with a showing of pretext").

Berry failed to create a genuine dispute of material fact regarding whether Crestwood's stated reason for firing her was pretextual. The record establishes that most interviewees—16 out of 24—complained about Berry's behavior. At least nine specifically said that Berry was a "bully" or "threatening" or "abusive" at work. One employee described Berry as "very violent" on two occasions. Berry failed to create a genuine issue as to whether the reports were false or whether Crestwood sincerely believed that the reports were true. Nothing in the record suggests that Crestwood had any reason to doubt the numerous employees who reported misconduct and bullying. So Berry failed to establish a genuine issue of pretext.

Berry insists that the close temporal proximity between her complaints and her termination proves pretext. We have explained that "very close" temporal proximity between a protected activity and an adverse action can create an inference of causation. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation and internal quotation marks omitted). And evidence of causation can be used to prove pretext. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 n.10 (1981). But the intervening discovery of employee misconduct can sever the causal inference created by close temporal proximity. And it did so here.

To be sure, in the months before her termination, Berry made several complaints about racial discrimination. Her last call to the hotline was seven days before her termination. She complained again during her in-person meeting with Friday and was terminated just three days later.

But also before Berry's termination, Crestwood conducted an employee-relations survey and uncovered substantial evidence of misconduct. The interviews revealed that Berry bullied several coworkers and that her conduct caused several employees to quit. The interviews occurred between May 14 and 17, and Berry was terminated on May 18. Despite close temporal proximity between Berry's complaints and her termination, the intervening discovery of misconduct undercuts the inference that Berry's complaints caused her termination.

Berry asserts that her positive employment evaluations—which make no mention of bullying—suggest that Crestwood's

explanation was pretextual. But Berry's final evaluation occurred *before* other employees complained about her. So it does not undermine the legitimacy of Crestwood's proffered justification.

Berry also argues that pretext can be inferred from Friday's conduct during the interviews; Berry asserts that Friday disregarded one report that Berry was targeted and two reports of racial discrimination. But Friday did not disregard these reports. Indeed, her interview notes reflect the comments. Friday testified that her recommendations were "based on trends." And the overwhelming trend was that Berry was a "bully" and "threatening" and "abusive." That Berry and two employees told a different story does not undermine the weight or veracity of the other reports.

Berry's remaining evidence fails to establish pretext. Berry states that Friday wrote in her interview notes that "Daphne [Berry] calls corporate." According to Berry, a reasonable juror could infer from this note that Friday began her interviews with an "eye towards targeting Berry." We disagree.

Friday was sent to investigate Berry's complaints. It was foreseeable that during her investigation—and especially during a meeting with hospital administrators—Friday would learn that Berry had called corporate. The note does not suggest that Crestwood terminated Berry *because* she called corporate. Berry also points to the human resource director's "demeanor" during her termination. But a harsh tone during a termination meeting does not create a factual dispute about whether Crestwood's rea-

son was genuine or pretextual. Berry argues that differential treatment compared to others "with the same or similar alleged conduct" establishes pretext. But Berry fails to identify any employees who were accused of similar misconduct.

To establish a genuine dispute of material fact about pretext, Berry had to cast doubt on Crestwood's justification for her termination. Crestwood explained that it fired Berry after numerous employees reported that she was a bully and source of interpersonal conflict. None of Berry's evidence would allow a reasonable factfinder to find that Crestwood's stated reason is "unworthy of credence." *Gogel*, 967 F.3d at 1136 (citation and internal quotation marks omitted).

### B. Employees May Prove Retaliation with Whatever Circumstantial Evidence Allows a Reasonable Inference of Retaliation, But Berry's Evidence Falls Short.

Berry argues that even if she cannot satisfy her burden under the *McDonnell Douglas* framework, she presented a "convincing mosaic" of circumstantial evidence that allows her retaliation claims to survive summary judgment. We recently held that an employee can prove retaliation with circumstantial evidence so long as the evidence raises a reasonable inference of retaliatory intent. *See Yelling*, slip. op. at 25. In other words, the *McDonnell Douglas* framework is not the only way to prove retaliation. *Id.* We underscore why that holding is correct and explain why Berry's circumstantial evidence fails to raise a genuine dispute of material fact regarding Crestwood's retaliatory intent.

1.  An Employee May Rely on a Convincing Mosaic of Circum-
    stantial Evidence to Prove Retaliation.

We apply the "conventional rule of civil litigation"—that
an employee may prove any civil claim, including a claim of retal-
iation, with circumstantial evidence. *See Desert Palace, Inc. v. Costa*,
539 U.S. 90, 99 (2003) (alterations adopted) (citation and internal
quotation marks omitted). When an employee relies on circum-
stantial evidence of retaliation in opposition to summary judg-
ment, she must present enough circumstantial evidence to create
a genuine issue of material fact about the employer's retaliatory
intent. *See Lockheed-Martin*, 644 F.3d at 1328. A genuine issue ex-
ists if the evidence, viewed in the light most favorable to the em-
ployee, would allow a reasonable jury to infer that the employer
engaged in intentional retaliation. *Id*. This legal standard applies
no matter how an employee tries to prove her claim.

The *McDonnell Douglas* framework is one "tool" that helps
an employee prove retaliation with circumstantial evidence. *Com-
cast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009,
1019 (2020). It offers "a sensible, orderly way to evaluate the evi-
dence" and helps the employee to "raise[] an inference" of unlaw-
ful conduct. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577
(1978). But the framework is not "an inflexible rule." *Id*. at 575.
For decades we have explained that the *McDonnell Douglas*
framework "is not the exclusive means" by which an employee
can prove discrimination with circumstantial evidence. *Lee v. Rus-
sell Cnty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982); *accord*

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). The *McDonnell Douglas* framework is also not the only way to prove retaliation; instead, it is *one* way to prove retaliation with circumstantial evidence.

Without relying on the *McDonnell Douglas* framework, an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent. Some of our precedents refer to this evidentiary approach as the "convincing-mosaic framework." But a "convincing mosaic" is a metaphor, not a legal test and not a framework. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016). The legal standard—and the question for the court at summary judgment—is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee. That legal standard applies no matter how an employee presents her circumstantial evidence.

Employees are not limited in the kinds of circumstantial evidence they may present. We have identified three nonexclusive categories of circumstantial evidence that can raise a reasonable inference of unlawful conduct: evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual. *See Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022). Whatever form the evidence takes, "so long as [it] raises a reasonable inference" that the em-

ployer retaliated against the employee, "summary judgment is improper." *See Lockheed-Martin*, 644 F.3d at 1328.

To survive summary judgment, the employee must present a story, supported by evidence, that would allow a reasonable jury to find that the employer engaged in unlawful retaliation against the employee. *See Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019). The court must view the evidence in the light most favorable to the employee and draw all reasonable inferences in her favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "But inferences in favor of [an employee] can be based only on evidence—not on speculation." *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1058 (11th Cir. 2020). "[A] scintilla of evidence in support of the [employee's] position" is always insufficient. *Anderson*, 477 U.S. at 252. When an employer offers "abundant and uncontroverted independent evidence" that no retaliation occurred, the employer will be awarded summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

Although the *McDonnell Douglas* framework is merely a "tool" for proving retaliation, it is a useful one. *See Comcast Corp.*, 140 S. Ct. at 1019. The burden of persuading the trier of fact that the employer intentionally retaliated "remains at all times" with the employee. *Burdine*, 450 U.S. at 253. The *McDonnell Douglas* framework "bring[s] the litigants and the court expeditiously and fairly to this ultimate question." *Id.* So when employees have the evidence to proceed under *McDonnell Douglas*, they will often use that familiar framework. *See Ossman v. Meredith Corp.*, ___ F.4th ___,

No. 22-11462 (11th Cir. 2023). ("[T]he convincing mosaic meta-phor offers an alternative to [employees] unable to succeed through the *McDonnell Douglas* framework."). But an employee may present circumstantial evidence—in any form—that creates a reasonable inference of retaliation.

### 2. Berry Fails to Offer a Convincing Mosaic.

Berry argues that even if her claims fail under the *McDonnell Douglas* framework, her claims survive because she presented a convincing mosaic of circumstantial evidence that raises a reasonable inference of retaliation. But for the reasons we explain below, her circumstantial evidence fails to create a genuine issue concerning Crestwood's retaliatory intent.

Crestwood contends that Berry did not preserve the convincing-mosaic arguments that she raises in this appeal. But parties do not forfeit "individual arguments." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194 (11th Cir. 2018) (citation omitted). If a party presents an issue to the district court, she may make any argument in support of that issue on appeal. *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). Berry argued in the district court that her evidence raises a reasonable inference of retaliation, so the issue was adequately preserved.

Berry argues that the record contains evidence of suspicious timing and ambiguous statements, systematically better treatment of similarly situated employees, and pretext. But the evidence she identifies, viewed in the light most favorable to her,

would not allow a reasonable jury to infer that Crestwood retaliated against her. We address that evidence in turn.

First, Berry points to evidence of suspicious timing. Specifically, she relies on the close temporal proximity between her last complaint and her termination. But as we explained, Crestwood's intervening discovery of misconduct fatally undermines the probative value of temporal proximity between her protected activity and her termination.

Berry also points to allegedly "ambiguous statements" as evidence of retaliatory intent. She reminds us that during interviews with hospital administrators, Friday wrote in her notes: "Daphne calls corporate." But Friday's note is neither "ambiguous" nor suggestive of retaliatory intent. As we explained, the note proves only that during her interviews with Crestwood administrators, Friday learned that Berry called the corporate hotline.

Berry also suggests that Friday showed indifference to one comment in favor of Berry and two complaints of racial discrimination by failing to include those comments in her final report. But Friday recorded the comments and complaints in her interview notes. And she testified that her report and her recommendations were "based on trends." The omission of outlier comments—in a final report that summarizes "trends"—does not support an inference of retaliatory intent.

Next, Berry turns to evidence of systematically better treatment of similarly situated employees. She asserts that two

employees—Shane Gann and Paul Mizzell—engaged in similar misconduct but were not terminated. But Berry must show that she and her comparators were "similarly situated in all material respects." *See Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc) (internal quotation marks omitted).

Nothing in the record suggests that either Gann or Mizzell engaged in misconduct comparable in degree or kind to Berry's misconduct. Gann yelled at Berry in front of other employees. And Mizzell "exhibited bullying behaviors" toward his colleagues for a period of time. But neither employee was the subject of multiple reports that they were unprofessional, threatening, intimidating, and abusive. Because Berry cannot prove that other employees engaged in a similar degree of misconduct, she lacks evidence of better treatment of similarly situated employees.

Last, Berry asks us to infer intentional retaliation from the same evidence that she uses to argue pretext under the *McDonnell Douglas* framework. But for the reasons we have explained, none of that evidence creates a genuine dispute of material fact regarding whether Crestwood's explanation was pretextual.

To be sure, evidence of pretext may, but need not always, be part of the employee's evidence when an employee attempts to prove retaliation without the *McDonnell Douglas* framework. Under the *McDonnell Douglas* framework, an employer may offer a legitimate, nonretaliatory reason for its adverse action. *Tolar*, 997 F.3d at 1289. But when an employer does not proffer a nonretaliatory explanation, there is nothing for the employee to rebut. Of

course, an employer will ordinarily want to explain its conduct. And when it does, the employee needs to rebut that explanation. Here, Crestwood offered a legitimate, nonretaliatory explanation for terminating Berry, and Berry failed to rebut it.

In sum, the circumstantial evidence cited by Berry—viewed as a whole and in the light most favorable to her—does not create a reasonable inference of intentional retaliation. To be sure, an employee can prove retaliation without the *McDonnell Douglas* framework. But Berry has failed to do so.

## C. Berry Abandoned a Challenge to the Denial of Her Rule 59(e) Motion.

In a section of her brief that addresses evidence of pretext and suspicious timing, Berry argues in passing that the district court abused its discretion when it denied her motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). But Berry did not properly preserve a challenge to the denial of her motion. And even if she had, her challenge would fail.

Berry abandoned her challenge to the denial of her Rule 59(e) motion because she did not "plainly and prominently raise" the issue in her opening brief. *See Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) (citation and internal quotation marks omitted). A party abandons an issue when she makes only passing references to it, references it as mere background to main arguments, or buries it within other arguments. *Id.* at 681–82. Abandonment also occurs if a party raises an issue for the first time in a reply brief. *Id.* at 683. Berry raises her challenge in a section about pretext and mentions it only in passing as support for

her main argument about temporal proximity and pretext. She dedicates a section to the Rule 59(e) motion in her reply brief, but an issue cannot be raised for the first time in a reply brief. *Id.* So Berry abandoned any challenge to the denial of her Rule 59(e) motion.

Even if it had been preserved, Berry's challenge would fail. We review the denial of a Rule 59(e) motion for abuse of discretion. *Auto. Alignment & Body Serv. v. State Farm Mut. Auto. Ins.*, 953 F.3d 707, 719 (11th Cir. 2020). Rule 59(e) may not be used "to relitigate old matters, [or to] raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). The district court correctly determined that an unpublished decision was not an intervening change in the law and did not provide a basis for altering the judgment. And Berry otherwise attempted to relitigate the issue of pretext and raise arguments about temporal proximity that could have been raised earlier in the proceeding.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Crestwood.

Abudu, Circuit Judge, Concurring:

I agree with my colleagues' determination that the district court correctly entered summary judgment for Crestwood.  Specifically, Daphne Berry failed to rebut, head-on, Crestwood's proffered legitimate and non-retaliatory reason for terminating her—a series of complaints made against her, after her promotion, for workplace bullying.  Although Ms. Berry's claims fail under the current legal framework, it is apparent that Crestwood's actions toward her changed once she was promoted.  To wit, she was an up-and-coming leader before her promotion but after her promotion, based on complaints from supervisees, she morphed into someone who "yells and screams at [staff]" and who always "bull[ies] [people]." (Maj. Op. at 6).  Even though the timing between her complaints and her ultimate termination is suspicious, Ms. Berry did not overcome the fact that Crestwood's discovery of numerous complaints undermines the probative value of that temporal proximity.  *See Johnson v. Miami-Dade County.*, 948 F.3d 1318, 1328 (11th Cir. 2020) (temporal proximity of less than two months was insufficient by itself to establish pretext).

Although Berry presented evidence that she contends amounts to an inference of retaliation, including the suspicious timing between her internal complaints of discrimination and her termination, the record—as a whole—does not include sufficient evidence to support her contention.

Even still, I write separately to briefly discuss and observe that, although this Circuit treats the pretext analysis under the

convincing mosaic approach and the pretext analysis embedded within the *McDonnell Douglas* framework as alternatives, they are—in effect—one and the same.  Moreover, I write to encourage this Court to decide whether we will do away with this distinction-without-a-difference and collapse these two approaches into one all-encompassing framework or examine the convincing mosaic approach as a true "alternative to the *McDonnell Douglas* framework." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021).

Although we have applied the convincing mosaic to Title VII discrimination claims for decades, this is only the second time in a published opinion where we have explicitly held that a plaintiff can prove retaliation through the convincing mosaic approach. *See Yelling v. St. Vincent's Health Sys.*, No. 21-10017, slip. op. at 20 (11th Cir. Oct. 5, 2023) (first published opinion addressing the convincing mosaic in the Title VII retaliation context). Ostensibly, this development seems progressive; in practice, it is unlikely to yield any meaningful results for plaintiffs who cannot succeed on a retaliation claim under the *McDonnell Douglas* framework.  If a plaintiff cannot establish pretext under *McDonnell Douglas*, then she will be hard-pressed to establish pretext with a convincing mosaic.  We need not look any further than the instant case where we apply the convincing mosaic approach to Berry's retaliation claim, then immediately curtail its application and dismiss her claims. Then, we neither provide clear guidance for how the convincing mosaic approach should be analyzed nor

do we effectively explain how it differs from the *McDonnell Douglas* pretext analysis.

My colleagues properly observe that we have used the phrase "convincing mosaic" as a metaphor simply to recognize that courts must consider the totality of a plaintiff's circumstantial evidence on summary judgment. That alone, however, does not explain the difference between the two approaches—at least in terms of the ever-significant pretext analysis—because the *McDonnell Douglas* framework also relies on circumstantial evidence. *See Lee v. Russell Cnty. Bd. of Educ.*, 684 F.2d 769, 773–74 (11th Cir. 1982) ("The *McDonnell Douglas* analysis is 'intended progressively to sharpen inquiry into the elusive factual question' . . . where the plaintiff's case is made out with circumstantial evidence. Where a case of discrimination is made out by direct evidence, reliance on the four-part test developed for circumstantial evidence is obviously unnecessary.") (internal citations omitted).

This Court's inquiry into pretext under *McDonnell Douglas* only nominally differs from its inquiry into a convincing mosaic. In other words, both approaches boil down to the same pretext analysis to survive summary judgment. To be sure, the *McDonnell Douglas* framework first requires the plaintiff to establish a *prima facie* case of retaliation, then requires the defendant to proffer a non-retaliatory reason for the employment decision, and last requires the plaintiff to establish that the proffered reason was pretextual. *See McDonnell Douglas Corp.*, 411 U.S. 792, 801–05 (1973). To prove that an employer's explanation is pretextual, an

4                    ABUDU, J., Concurring                    22-11129

employee must cast enough doubt on its veracity that a reasonable factfinder could find it "unworthy of credence." *Gogel v. Kia Motors Manuf. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (*en banc*) (citation and internal quotation marks omitted). Under *McDonnell Douglas*, a plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" to rebut the employer's non-retaliatory reason. *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022) (citation and internal quotation marks omitted).

Cases within our Circuit have held that the convincing mosaic approach requires plaintiffs to meet the same burden. For example, in *Thomas v. Sheriff of Jefferson County,* a three-judge panel held:

> Within the convincing mosaic framework, a plaintiff can show pretext by (a) casting sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct, (b) showing that the employer's articulated reason is false and that the false reason hid discrimination, or (c) establishing that the employer has failed to clearly articulate and follow its formal policies.

*Thomas v. Sheriff of Jefferson Cnty.,* No. 22-13875, 2023 WL 6534602, at *6 (11th Cir. Oct. 6, 2023) (citing *Lewis v. City of*

*Union City*, 934 F.3d 1169, 1186 (11th Cir. 2019)) (internal quotations omitted).

This Court has further explained that a convincing mosaic may also "be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Lewis*, 934 F.3d at 1185 (internal quotations omitted).

To further distill this point, this Circuit has, on multiple occasions, stated that a plaintiff cannot get around pretext by merely attempting to take the convincing mosaic route. *See e.g.*, *Thomas*, 2023 WL 6534602, at *6 ("[T]he whole convincing mosaic inquiry is identical to the final stage of the *McDonnell Douglas* framework: both ask whether there is enough evidence for a reasonable jury to infer intentional [retaliation]."); *see also Reyes v. Fed. Express Corp.*, No. 21-12639, 2022 WL 3867901, at *3 (11th Cir. Aug. 30, 2022) (*citing Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) ("[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case. However, the plaintiff must also show pretext under this alternative framework."); *see also Tsavaris v. Savannah L. Sch., LLC*, 847 F. App'x 634, 637 (11th Cir. 2021) (affirming district court determination that plaintiff "failed to present a con-

vincing mosaic of circumstantial evidence because . . . she failed
to show pretext.").

Based on these cases and other, albeit primarily un-
published, opinions[1] of this Court, district courts across the Cir-
cuit have overwhelmingly found that pretext is a *requirement* of
the convincing mosaic approach without distinguishing the pre-
text analyses. *See e.g.*, *Powe v. Farmers Ins. Exch.*, No. 1:21-CV-
01206-SEG, 2023 WL 2778681, at *12 (N.D. Ga. Mar. 30, 2023)
(*quoting Reyes*, 2022 WL 3867901, at *3 ("[T]he plaintiff must also
show pretext under this alternative [convincing mosaic] frame-
work."); *see also Moore v. City of Atlanta*, No. 1:20-CV-3380-JPB-
JKL, 2023 WL 2646300, at *7 (N.D. Ga. Mar. 27, 2023) ("Overall,
the Court agrees that the record supports a finding of pretext re-
gardless of which standard [convincing mosaic or *McDonnell Doug-
las*] is applied and that the evidence goes beyond mere quarrelling
with Defendants' judgment."); *McCreight v. AuburnBank*, No. 3:19-
CV-865-RAH-SMD, 2022 WL 2541127, at *6 (M.D. Ala. July 7,
2022) (internal quotations omitted) ("[T]he pretext prong of the
convincing mosaic test is fatal to McCreight's mosaic theory. She
must do more than argu[e] that the employer's reasons are false;
she must establish that discrimination was the real reason for her
termination."); *see also Flowers v. Troup Cnty., Ga., Sch. Dist.,* 1 F.

---

[1] The confusion regarding whether pretext is required under the convincing
mosaic approach mainly occurs at the district court level due to a body of
caselaw this Court has established in unpublished opinions. I reference many
of these opinions only as examples to illustrate the source of the issue within
the Circuit.

Supp. 3d 1363, 1381 (N.D. Ga. 2014) (explaining that a plaintiff cannot simply rearrange "discarded" pretext tiles into a convincing evidentiary mosaic).

For decades, we have explained that the *McDonnell Douglas* framework "is not the exclusive means" by which an employee can prove discrimination with circumstantial evidence. *Lee*, 684 F.2d at 773; *accord Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). The plaintiff "can still survive summary judgment by presenting circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith*, 644 F.3d at 1328. We have now held that the *McDonnell Douglas* framework is also not the only way to prove retaliation. But is this accurate?

As my colleagues also correctly point out, "the legal standard—and the question for the court at summary judgment—is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee." (Maj. Op. at 17). This is true under the *McDonnell Douglas* and convincing mosaic approaches, but both methods require a plaintiff to leap the pretext hurdle. Yet, we treat these approaches as differing alternatives. They are not. It seems that the *McDonnell Douglas* framework—at least the pretext analysis—*is the exclusive way* for plaintiffs to prove retaliation regardless of label.

To end the resulting confusion, we should either do as our sister Circuit has done: drop the distinction and evaluate all evidence "as a whole," *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760,

8                          Abudu, J., Concurring                    22-11129

765 (7th Cir. 2016), or allow the convincing mosaic theory to be a true alternative.   Either way—we should choose one consistent path lest we continue to develop a body of law that perpetuates a convincing *mirage*, which confuses litigants, gives false hope, and shuts out more plaintiffs than our caselaw purports to allow past go.